## CREED PORTER, *alias* TAYLOR, *v.* THE STATE.

1. EVIDENCE.—The rule requiring the production of the best evidence of which the case is susceptible does not demand the greatest amount of proof procurable, but only excludes such evidence as implies that better evidence exists and is withheld or not accounted for. This rule has been adopted for the prevention of fraud, and to secure a pure administration of justice.

2. SAME—ASSAULT WITH INTENT TO MURDER.—On a trial for an assault with intent to murder, if no witness of the assault be produced, and the state relies on circumstantial evidence to sustain the charge, the prosecution should be required to show that proper effort had been made to obtain the testimony of the assaulted party, or, otherwise, to account for the non-production of his testimony.

3. JURY—SEPARATION.—After a jury in a felony case have been sworn and impaneled, the court should not permit their separation, even with the consent of the district attorney and of the accused, unless they are put under the protection and control of an officer, for the purpose of preventing communications between them and other persons.

APPEAL from the District Court of Smith. Tried below before the Hon. M. H. BONNER.

The evidence adduced by the prosecution was the testimony of witnesses who stated that on the night of January 6, 1876, the accused and Barrett, the assaulted party, were at Rhome's grocery, in Smith county; that Barrett bought 50 cents' worth of whisky, and to pay for it gave a

$5 bill to Rhome, who gave him in change three $1 bills, one 50-cent bill, and four quarters; that the accused and Barrett left the grocery together between ten and twelve o'clock that night; that about two o'clock Barrett was found badly beaten and cut; that the accused was found asleep on the floor in his own house, with his clothing on, and, being told he was a prisoner, and Barrett's money being demanded of him, he took something from his pocket, and put his hand in his wife's shoe and threw it under the bed; that the shoe was found to contain three $1 bills, one 50-cent and three 25-cent pieces, which looked like the same money given to Barrett by Rhome. One witness, however, stated that another 25-cent piece was found near where the accused was lying on the floor. Other circumstances were also proved to connect the accused with the offense; but, as stated in the opinion, no reason was shown why Barrett was not offered as a witness, though some of the witnesses stated he was a railroad hand and a transient person.

*Thomas W. Dodd,* for the appellant, filed an able and exhaustive argument upon the law and the facts.

*George McCormick,* Assistant Attorney General, for the State.

WHITE, J.   The court did not err in overruling the motion to quash the indictment, because, when tested by repeated decisions of our supreme court, it is amply sufficient to charge the defendant with the statutory crime of assault with intent to murder. *The State* v. *Rutherford,* 13 Texas, 28; *The State* v. *Croft,* 15 Texas, 575; *The State* v. *Killough,* 32 Texas, 74; *The State* v. *Peters,* 36 Texas, 325; *James* v. *The State,* 36 Texas, 646; *Martin* v. *The State,* 40 Texas, 19; *Bittick* v. *The State,* 40 Texas, 117;

*The State* v. *Walker*, 40 Texas, 485 ; *Carr* v. *The State*, 41 Texas, 546 ; *Mayfield* v. *The State*, Tyler term, 1875.

The indictment charges that defendant assaulted one Tom Barrett, with intent to murder him. The assaulted party, Barrett, did not testify upon the trial of the case, and, so far as the record discloses, there was no effort upon the part of the prosecution to procure the attendance of this witness ; nor was any attempt made to account for this want of diligence or the absence of the witness, except a statement, made in the testimony of one of the witnesses, that Barrett was a railroad man and a transient person. The evidence upon which defendant was tried and convicted was wholly presumptive and circumstantial.

The question for solution upon this state of case is : If positive and direct testimony of the facts to be established was attainable, or might by diligence have been obtained, could secondary and circumstantial, or presumptive, evidence be allowed to prove the *corpus delicti?*

Upon this subject the doctrine is thus laid down by Mr. Greenleaf : " A fourth rule which governs in the production of evidence is that which requires the best evidence of which the case in its nature is susceptible. This rule does not demand the greatest amount of evidence which can possibly be given of any fact ; but its design is to prevent the introduction of any which, from the nature of the case, supposes that better evidence is in possession of the party. It is adopted for the prevention of fraud ; for, when it is apparent that better evidence is withheld, it is fair to presume that the party had some sinister motive for not producing it, and that, if offered, his design would be frustrated. The rule thus becomes essential to the pure administration of justice. In requiring the production of the best evidence applicable to each particular fact, it is meant that no evidence shall be received which is merely substitutionary in its nature, so long as the original evidence can be had.

The rule only excludes that evidence which itself indicates the existence of more original sources of information." 1 Greenl. on Ev., sec. 82.

Mr. Blackstone states the rule most concisely in these words: " Positive evidence is always required where, from the nature of the case, it appears it might possibly have been had." 1 Bl. Com., book 3, side page 371. And Mr. Burrill, in his work on Circumstantial Evidence, sums up the subject as follows: " In all cases the best evidence must be adduced which the nature of the case admits. This is another general rule equally applicable to cases of direct and circumstantial evidence, and is a branch of the general principle that the suppression of pertinent evidence, by a party who has it in his power to produce it, raises a presumption against him, and throws discredit on the evidence which he offers. It is particularly applicable to circumstantial evidence of the presumptive kind, and has been otherwise expressed in the following terms: Presumptive evidence ought never to be relied on where direct testimony is wilfully withheld. It is applicable, moreover, not only to the principal fact which is proposed to be proved, but to all the evidentiary facts which may be used as means for that purpose; and hence it has been expressively called the master rule which governs all subordinate rules." Burrill on Cir. Ev. 730.

" Other and inferior proof cannot be resorted to till it be impossible to procure the best evidence. If one person be dead who could have sworn directly to the fact, and another be living who can swear to the same fact, he must be produced. In such cases mere presumptive, *prima facie,* or circumstantial evidence is secondary in degree, and cannot be used till all the sources of direct evidence are exhausted. *Williams* v. *East India Co.,* 3 East, 192. Indeed, the rule is general; you shall not be permitted to grope in the twilight of circumstantial evidence when the broad daylight of

·direct and positive proof is attainable." 1 Phillips on Ev., 4th Am. ed. (Cowan, Hill & Edwards' notes), 635; *Commonwealth* v. *Carter*, 11 Pick. 277; *Plunckett's* case, .3 City H. Rec. 137; *United States* v. *Reyburn*, 6 Pet. 366.

In the case of *Richard Wilson* v. *The State*, decided at the ·Galveston term of the supreme court, March 3, 1876, which was a case of theft, it was held that the want of the owner's ·consent may be established by his own evidence or the evi- ·dence of the party from whom it was taken, or it may be established by facts and circumstances, provided such cir- ·cumstances so proved are of such a nature as to exclude .absolutely every reasonable presumption that the owner gave his consent to the taking. And, to the same effect, see several cases cited in the note to 1 Phillips on Ev. 635, above referred to.

Now, let us briefly apply these well-settled rules and prin- ·ciples of the law to the case under consideration. If Tom Barrett was assaulted by defendant, then, according to the ·evidence, the offense was committed between the hours of ten and two o'clock on the night of the 6th and 7th of January, 1876. It was not only committed at the dead hour of night, but upon a lonely trail, back of a field. No one was pres- ·ent but the assailant and his victim. The probabilities are ·strong, and the presumption great, that Barrett knew, and would, if produced, have been able to testify positively to the fact of the commission, and the identity of the party who committed the deed. Barrett, however, is not called as a witness, nor is any reason or excuse assigned for his absence. The fact—if it were a fact—that defendant was the guilty party could doubtless have been established most directly, positively, and unequivocally by him. Instead of this, the state, through a chain of circumstances connecting the accused with the commission of the offense, endeavors to create and establish the presumption that it could not have been done by any one else.

" In criminal cases the mere union of a limited number of independent circumstances, each of which is of an imperfect and inconclusive nature, cannot afford a just ground for conviction." 1 Starkie on Ev. 570 ; 1 Greenl. on Ev., sec. 13, *a; Roseborough* v. *The State*, 43 Texas, 575.

" There must be legal, competent evidence, pertinently identifying the defendant with the transaction constituting the offense charged against him. It is the duty of the court to require that such legal, competent evidence shall be adduced on the trial in order to sustain a verdict of guilty." *Tollett* v. *The State*, 44 Texas, 95.

We do not believe such evidence was legitimate, under these facts, to fix the guilt of the accused, or that resort could be had to such evidence when the very evidence itself presupposed the existence of better.

Another error committed on the trial below, and fatal to the validity of the judgment, is one which is not presented by the zealous counsel who has faithfully and well, under an appointment of the court, represented the defendant in this case. The record discloses the fact that, after the defendant was placed upon his trial, and after the jury had been impaneled and sworn to try the case, and a portion of the evidence had been heard by them, the court, by consent of parties, permitted the jury to separate and disperse, from the hour of adjournment of the court, upon the evening of one day, to the convening of the court the following morning. This cannot be done in a felony case, even if the defendant does consent.

" After a jury have been sworn and impaneled to try any case of felony, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with consent of the district attorney and the defendant, and in charge of an officer." Pasc. Dig., Art. 3070.

" When a separation takes place by the consent of the

accused, every juror should be under the protection and control of an officer, that no communication may be had with other persons in anywise touching the case on trial. It is the practice of the courts to permit a juror to retire from the panel for a temporary or necessary cause, and this practice grows out of necessity; but the court should be watchful and vigilant to see that the law is executed which forbids improper conduct on the part of jurors, and all intermeddlings or tampering with them by parties interested in the suit, their friends, or other persons." *Brown* v. *The State*, 38 Texas, 482.

" The law not only prohibits the separation of the jury on the trial of a felony, but it also prohibits any communications with the jury after they have been impaneled to try a criminal action, excepting in the presence and by the permission of the court." *Walker & Black* v. *The State*, 37 Texas, 366; Pasc. Dig., Art. 3072. For a full discussion of the whole subject see *Early* v. *The State*, decided by this court at the present term, *ante* p. 248.

We deem it unnecessary to notice the several other interesting questions discussed in the able brief of defendant's counsel, as they are of a character not likely to arise upon any subsequent trial of this case.

The judgment of the lower court is reversed and the cause is remanded.

*Reversed and remanded.*